FILED
August 03, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002825654

BUCHALTER NEMER
A Professional Corporation
  MIA S. BLACKLER (SBN 188112)
  CRAIG C. CHIANG (SBN: 209602)
333 Market Street, Suite 2500
San Francisco, CA 94105
Telephone: (415) 227-0900
Facsimile: (415) 227-0770
Email: cchiang@buchalter.com

Attorneys for Secured Creditor
JPMorgan Chase Bank, National Association

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>OAK SONG, LLC,<br><br>　　　　　Debtor. | Case No. 10-39123<br><br>Chapter 11<br><br>DC No.: BN-001<br><br>**MOTION FOR ORDER EXCUSING TURNOVER PURSUANT TO BANKRUPTCY CODE §543 AND ALLOWING RECEIVER TO REMAIN IN POSSESSION OF REAL PROPERTY**<br><br>Hearing Date:　August 25, 2010<br>Time:　　　　　10:00 a.m.<br>Location:　　　501 I Street, 6th Floor<br>　　　　　　　Courtroom 35, Dept. C<br>　　　　　　　Sacramento, California |

TO THE HONORABLE CHRISTOPHER KLEIN, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, THE UNITED STATES TRUSTEE AND OTHER PARTIES IN INTEREST:

JPMorgan Chase Bank, National Association ("JPMC") hereby submits this Motion for Order Excusing Turnvover and Allowing Receiver to Remain in Possession (the "Motion") in connection with the above-captioned chapter 11 case of Oak Song, LLC ("Oak Song" or

"Debtor").

## I. INTRODUCTORY STATEMENT

The facts of this case support the retention of Richard L. Sweeney of Preferred Realty Advisors (the "Receiver") as receiver over real property commonly known as 9205 Folsom Boulevard, Sacramento, California (the "Property"), which is improved with a five-unit strip mall, with four of the units currently occupied. With little hope for a successful reorganization, the Debtor has filed this Chapter 11 case with the sole purpose of attempting to frustrate the Superior Court's desire to have an independent receiver take possession, custody and control of the Property to preserve its value. By this Motion, JPMC, a secured creditor of the Debtor, seeks an order excusing the Receiver from complying with sections 543(a) and 543(b)(1) of the Bankruptcy Code.

It is imperative that the Receiver be allowed to remain in place and continue to possess and manage the Property. The Property is presently in a highly sensitive stage. The Receiver, who has already invested the significant time and effort necessary to maintain the Property and who has expertise in managing properties of this size and nature, is the most efficient choice to meet the variety of needs that are looming, including the eviction of non-paying tenants. Last month, the Receiver served 3-Day Notices on two of the tenants, and would continue to handle efficiently the eviction and re-leasing efforts.

This Motion, the supporting declaration and its attached exhibits, will demonstrate the important role the Receiver has played, and the need for his continued role, in protecting the value of the Property. Even under the best scenarios there is no recognizable value in the Property remaining for unsecured creditors over and above JPMC's fully perfected and undisputed first priority lien.

## II. FACTUAL BACKGROUND

Prior to the petition date, on April 29, 2010, the Superior Court entered its Order Appointing Receiver and Confirming Preliminary Injunction following the default of the Debtor

on its obligations under the Note and Deed of Trust, including the failure to make the monthly payments due under the Note on December 1, 2009, and each month thereafter.[1] By reason of the Debtor's failure to cure defaults under the Note and Trust Deed, JPMC exercised its rights and remedies under the Loan Document including proceeding with foreclosing on the Trust Deed. True and correct copies of the Note and Trust Deed are attached to the Fadum Declaration as Exhibits A and B respectively.

At the time of his appointment, the Receiver took immediate steps to remedy the problems at the Property, including commencing eviction procedures for non-paying tenants, maintaining the Property, clearing overgrown weeds and shrubs on the premises, and facilitating an environmental inspection. Since his appointment, the Receiver has been faced with non-paying tenants and has issued two 3-Day Notices in order to free up two units for future leasing.

A trustee's sale of the Property was set to occur on July 22, 2010. However, the Debtor filed its Chapter 11 petition, commencing this case and staying the trustee sale. The Debtor has yet to file its bankruptcy schedules, so its position as to the value of the Property is unknown, although the Debtor does acknowledge that its bankruptcy case is a single asset real estate case and that the Property generates all of its income.

JPMC believes that it is not protected with any equity cushion, considering the fact that the Debtor purchased the Property in July of 2008, at the height of the recent real estate market. The Property is encumbered with JPMC's first priority lien, securing an unpaid balance exceeding $1,204,516.95. Because the Property is significantly encumbered by JPMC's first priority lien, it is imperative that an experienced receiver continue to oversee and manage the Property, as sale of the Property may be JPMC's sole source of recovery. Prior to the Receiver's appointment, the Debtor had failed to make approximately five payments to JPMC, which provided the Superior Court with ample justification for appointing the Receiver to manage the

---

[1] On April 1, 2010, prior to the appointment of the Receiver, the Debtor made a partial payment of $20,000, in order to forestall the receiver action until April 12, 2010. Around the time of the Superior Court's appointment of the Receiver, JPMC credited this amount against the Debtor's indebtedness.

Property.

Since his appointment, the Receiver has been instrumental in stabilizing the Property and getting all facets of the Property back on track. In brief, the Receiver has secured and maintained the Property, commenced eviction procedures for non-paying tenants, and cleared overgrown weeds and shrubs on the premises to address a safety concern.

### A. Qualifications of the Receiver

The Receiver has significant independent expertise, having worked as a receiver and property consultant for more than 22 years. A copy of Receiver's resume with respect to such matters is attached as Exhibit C to the Fadum Declaration.

### B. Urgency of Maintaining the Receivership Estate

While the Receiver has been important thus far, his continued oversight is critical to maintaining the value of the Property. The Receiver is poised to begin necessary evictions and to continue in his duties to preserve the Property as provided in the Order Appointing Receiver, a true and correct copy of which is attached as Exhibit A to the Declaration of Richard L. Sweeney.

### C. There is Little Equity in the Property

As described in the state court pleadings filed by JPMC against the Debtor and his co-borrower, the Property is improved with a five unit commercial strip mall. The Debtor has yet to file its bankruptcy schedules, so its position as to the value of the Property is unknown. JPMC believes that it is not protected with any equity cushion, considering the fact that the Debtor purchased the Property in July of 2008, at the height of the recent real estate market.

The Property is encumbered with JPMC's first priority lien, securing an unpaid balance exceeding $1,204,516.95. No interest of any other creditor will suffer if the Receiver is maintained in his capacity. As of August 1, 2010, there was due, owing, and payable on the Note, the principal sum of $1,204,516.95, together with accrued unpaid interest from in the sum of $54,494.69, default interest in the sum of $37,473.86, plus accruing interest and late charges, fees, and costs of suit in amounts not yet determined.

## III. RELIEF REQUESTED

By this Motion, JPMC seeks an order pursuant to 11 U.S.C. § 543(d)(3) excusing the Receiver from compliance with 11 U.S.C. §§ 543(a) and 543(b)(1), without prejudice to JPMC's right to pursue additional or further relief, including relief from the automatic stay, or to the Debtor's right under the Bankruptcy Code, including the right to propose a plan.

## IV. ARGUMENT

Bankruptcy Code section 543(a) provides that once a custodian acquires knowledge of the commencement of a case under the Bankruptcy Code, the custodian's administration, in essence, is suspended, except for such action as is necessary to preserve property. Section 543(b)(1) further provides that a custodian shall deliver to the trustee (or debtor-in-possession) any property of the debtor the custodian then holds or controls. Section 101(11) defines a "custodian" to include a receiver of property of a debtor appointed in a case or proceeding not under the Bankruptcy Code. *See In re CCN Realty Corp.*, 19 B.R. 526, 528 (Bankr. S.D.N.Y. 1982).

Section 543(d), however, permits this Court to excuse a custodian from compliance with the preceding subsections of the statute if the interests of creditors would be better served by permitting retention of administrative control and possession of assets. *See, e.g., In re KCC-Fund V, Ltd.*, 96 B.R. 237, 238 (Bankr. W.D. Mo. 1989). Although section 543(d)(1) provides that maintaining a custodian in possession is appropriate when the "[I]nterests of creditors ... would be better served by permitting a custodian to continue in possession, custody, or control ...," the Bankruptcy Code does not provide any specific test for making such a determination. 11 U.S.C § 543(d)(1). Courts have established several exemplary criteria for making this determination, including (1) the likelihood of successful reorganization; (2) the probability that funds required for reorganization will be available; (3) whether there are prior instances of mismanagement by the debtor; (4) whether the debtor will use the turned-over property for the benefit of creditors; and (5) whether there is any reason to believe that other creditors' interests will suffer by keeping the debtor out of possession of the property. *See, e.g. In re Foundry of Barrington Partnership,*

129 B.R. 550, 558 (Bankr. N.D. Ill. 1991); *In re Constable Plaza Associates, L.P.*, 125 B.R. 98, 103 (Bankr. S.D. N.Y. 1991); *In re Poplar Springs Apartments of Atlantic, Ltd.*, 103 B.R. 146, 150 (Bankr. S.D. Ohio 1989); and *In re Willowood East Apartments of Indianapolis*, 117 B.R. 320, 322 (S.D. Ohio E.D. 1990).

Here, the Receiver is well-qualified to act in his present capacity, and the time and value concerns presently implicated mandate the continuation of the Receiver's appointment to protect and preserve the value of the Property. As detailed above, the Property, and thus the interests of the creditors, needs the Receiver's competent management and skill. Prior to the Receiver's appointment, the Debtor had failed to make five monthly payments to JPMC. Finally, it appears that all value will devolve on JPMC as the secured creditor; the efficiencies to be realized from maintaining the Receiver's oversight of the Property clearly counsel for excusing the Receiver's compliance with the turnover and other obligations of Section 543.

As the Debtor has yet to file a plan of reorganization, it is not entirely clear whether there is a likelihood of a successful reorganization. The Debtor has filed its Disclosure of Single Asset Real Estate, which states that the Property generates all of the Debtor's income. What is clear is that there is little reason to believe that other creditors' interests will suffer by keeping the Debtor out of possession of the Property as the Receiver is more than able to maintain its value.

## V. CONCLUSION

WHEREFORE, JPMC respectfully request entry of an order granting (a) the relief requested herein; and (b) such other and further relief as is just and proper under the circumstances.

DATED: August 3, 2010          BUCHALTER NEMER, PC

By:    /s Craig C. Chiang
      CRAIG C. CHIANG
      Attorneys for JPMorgan Chase Bank, National
      Association